IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2024

## STATE OF TENNESSEE v. ANTHONY LYNN TAYLOR

**Appeal from the Criminal Court for Sullivan County**
**No. S71761   James F. Goodwin, Jr., Judge**

_____

### No. E2023-00791-CCA-R3-CD
_____

The Defendant, Anthony Lynn Taylor, appeals the Sullivan County Criminal Court's revoking his probation and ordering him to serve his effective four-year sentence in confinement. On appeal the Defendant claims that the trial court abused its discretion by finding that he absconded from probation and that the trial court failed to place sufficient findings on the record to justify placing his sentence into effect. Based on our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Mitchell A. Raines (on appeal), Assistant Public Defender – Appellate Division, Franklin, Tennessee, and Melissa Owens (at hearing), Office of the Public Defender, Blountville, Tennessee, for the appellant, Anthony Lynn Taylor.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Matthew Darby, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In September 2019, the Sullivan County Grand Jury returned a four-count presentment, charging the Defendant with identity theft, a Class D felony, and forgery, criminal simulation, and theft of property valued more than one thousand dollars, Class E felonies. On October 18, 2019, the Defendant pled guilty to the charges, and the trial court sentenced him as a Range I, standard offender to four years for identity theft and three

years for each of the remaining convictions. The Defendant was to serve the sentences concurrently on supervised probation.

The record reflects that the Defendant's probation was revoked and reinstated on June 10, 2020. On July 30, 2020, his probation officer filed a probation violation affidavit, alleging that the Defendant violated his probation again by failing to inform her of his change of address and by absconding from supervision. Specifically, the Defendant's probation officer alleged as follows:

On or about June 29, 2020, the defendant was scheduled for a home visit at the homeless shelter in Kingsport, TN[;] however the defendant was not found at the shelter and [I] had no way to contact the defendant as the telephone number given on his probation order was for the Salvation Army in Kingsport, TN. The defendant's whereabouts are unknown at this time and [he] has absconded from supervision.

The trial court issued a probation violation warrant that same day.

On February 20, 2023, the Defendant was arrested for criminal trespass, occupying a structure unfit for occupancy, and violating his probation. On March 7, 2023, he was convicted in the Kingsport General Sessions Court of criminal trespass and occupying a structure unfit for occupancy. On March 21, 2023, the Defendant's probation officer filed a second probation violation affidavit, alleging that the Defendant also violated his probation by being convicted of the new offenses.

The trial court held a probation revocation hearing on May 3, 2023. At the outset of the hearing, defense counsel advised the trial court that two probation violations were pending in this case: The first alleged that the Defendant absconded, and the second alleged that he was convicted of new crimes. Regarding the first violation, defense counsel argued that the Defendant only failed to report, which was a technical violation. Regarding the second violation, defense counsel acknowledged that the Defendant pled guilty to criminal trespass and occupying a structure unfit for occupancy. However, defense counsel argued that the new convictions were only technical violations because they were Class B and C misdemeanors. Defense counsel asserted that the trial court could not place the Defendant's effective four-year sentence into effect based on technical violations. The Defendant then pled guilty to the second probation violation, and the State called its first witness in support of the absconding violation.

Amanda Owens, a probation officer with the Tennessee Probation and Parole Department, testified that the Defendant was assigned to her on October 18, 2019, and that he reported to the Blountville Community Supervision Office when he was released from

jail. The Defendant had an intake appointment scheduled for November 22, 2019, but he failed to show up for the appointment. The Defendant's previous intake reporting form showed a telephone number for the Defendant and his last known address, which was in Duffield, Virginia. Ms. Owens telephoned the Defendant but was unable to contact him. On December 12, 2019, Ms. Owens and another probation officer went to Duffield but could not find the address provided on the intake form. Ms. Owens filed a probation violation affidavit, alleging that the Defendant had absconded. On June 10, 2020, the Defendant admitted to the violation, and the trial court revoked and reinstated his probation.

Ms. Owens testified that on June 22, 2020, the Defendant reported to the Blountville Community Supervision Office for intake. He signed the paperwork for his probation, and an intake officer went over the terms and conditions of his probation with him. The Defendant listed his address as 829 Myrtle Street in Kingsport and provided a telephone number. He was supposed to have a Strong-R assessment on June 24, 2020, but he failed to show up for the appointment or contact the probation office about missing the appointment. The Defendant also was supposed to have a home visit on June 29, 2020. However, when officers went to the Kingsport address to conduct the visit, they were unable to locate him. The officers also looked for the Defendant at the Salvation Army on Dale Street, but he was not there. Ms. Owens called the telephone number provided by the Defendant at intake. The telephone number turned out to be the telephone number for the Salvation Army, but employees would not provide Ms. Owens with any information about the Defendant. Ms. Owens said she did not know the Defendant's whereabouts until February 20, 2023, when she received an electronic notification that he had been arrested for criminal trespass and occupying a structure unfit for occupancy.

On cross-examination, Ms. Owens testified that she did not personally meet with the Defendant when he reported for intake on June 22, 2020, and that she did not know 829 Myrtle Street was the address for Hunger First, a homeless shelter. After the Defendant's first probation violation in June 2020, he was released from jail and wrote on his intake form that he was living at the Salvation Army temporarily. Defense counsel asked Ms. Owens if the Defendant ever left Sullivan County after he was reinstated to probation, and she said she did not know because she never spoke with him. At that point, the State advised the trial court that the State did not have any evidence the Defendant ever left Sullivan County.

At the conclusion of Ms. Owens's testimony, the trial court asked Ms. Owens if there was a difference between failure to report and absconding. She responded:

> There is, we complete an absconding process, which is running to clear the NCIC, attempt all addresses known on the clear report. We [try] everything

that we can to get in touch with the [defendant] whenever that we file the absconding 5 & 6 Rules, just to make sure that if he had moved or had used a different address in the near recent past that we make sure that we'd attempt those places as well just to try to get these people to report, get our probationers to report. So, it's a little more of [an] in depth process whenever we do absconding.

The Defendant testified that he was homeless in June 2020, so he provided the address for Hunger First and the telephone number for the Salvation Army on his intake form. The Defendant may have been at Hunger First when probation officers arrived on June 29 to conduct his home visit, and he was not trying to avoid the probation officers. The Defendant said that he may have left Hunger First but that he could not remember. Although the Defendant did not have a stable place to live, he never lived outside Sullivan County. He acknowledged that he was "just staying where ever [he] could find a roof over [his] head" when he was arrested for criminal trespass and occupying a structure unfit for occupancy. He said he never hid from probation officers or police officers.

The Defendant testified that he could not report to probation because he did not have transportation. He also did not have any source of income. Recently, though, he learned that he may receive some money from the settlement of his uncle's estate. The Defendant said that if he received the money, he could buy a car and obtain housing so that he could comply with the terms of his probation. The Defendant stated that he suffered from congestive heart failure and was blind in one eye and that he had applied for Social Security disability. He said he had not been avoiding probation.

On cross-examination, the Defendant acknowledged that he previously pled guilty to violating probation by absconding and that the trial court reinstated his probation. He also acknowledged that after he was released from jail in June 2020, he reported to the Blountville Community Supervision Office for intake. The Defendant received paperwork about his probation and reviewed and signed the paperwork. He said that knew he was supposed to keep his probation officer informed of his address but that he did not have access to a telephone. The Defendant then said he "sometimes" had access to a telephone at Hunger First and the Salvation Army. The Defendant said that he asked two or three people for a ride to the probation office but that no one could take him.

The Defendant testified that he had been living in the condemned building for a few days when he was arrested in January 2023. He never saw a sign saying the building was condemned, and he never saw "No Trespassing" signs. The State questioned the Defendant about his original convictions in this case. The Defendant explained that two other men "duped" him into forging checks, including one check for $1,780. The men claimed to be carpenters and had the Defendant cash the checks for them. The men paid the Defendant

- 4 -

fifty dollars from each cashed check but kept the remainder of the money for themselves. The Defendant said that the men had guns and threatened him but that the police never arrested them.

At the conclusion of the hearing, the trial court concluded that the Defendant absconded from probation. The trial court found that the Defendant "showed up for one appointment" in June 2020, that he provided his probation officer with an address and telephone number, and that he "then went off on his merry way." The trial court further found that the Defendant never reported to Ms. Owens after that date, that he could not be located for a home visit at the address he provided, and that Ms. Owens looked for him but could not find him. The trial court noted that the Defendant had access to a telephone at times but that he never contacted Ms. Owens. The trial court then stated as follows:

> So, circumstantially, from the proof that this court has heard, even though he was most likely in our jurisdiction the whole time, to absent oneself or hide oneself clandestinely with the intent to avoid legal process, is the definition of absconding. Yes, he may have been in Kingsport, but he did not notify probation of a way to get ahold of him, he never went back to probation, probation went looking for him and couldn't find him and it wasn't until he was arrested on another charge, that his location was found. And when he was arrested, he was living in a condemned building with No Trespassing signs and was charged with that.

> So, based on these facts, and I realize it's all circumstantial evidence, but this court does find sufficient proof that Mr. Taylor had absconded from supervision. So, the court does find him guilty of the July 30, 2020, Violation Warrant. In looking through the file, this is the second time that he's been convicted of Absconding from Supervision. The first time he pled guilty to it, the second time he's found guilty of it, and I'm not unsympathetic to Mr. Taylor's situation of being homeless, but when someone's placed on probation, [there are] certain things and obligations that they have, that they have to find a way to meet, and Mr. Taylor has basically thrown his nose at those obligations since June of 2020.

> He wasn't arrested until February of 2023. So, since this is the second time that he's been convicted of Absconding from Supervision, I'm not placing any weight on the Criminal Trespass and Occupancy of Structure Unfit for Occupation conviction, . . . but because of the Absconding, he'll be required to serve his four-year sentence, he'll get credit for all time served, and that will be the order of the court.

# ANALYSIS

On appeal, the Defendant claims that the trial court erred when it found that he absconded because the State failed to prove that he willfully concealed himself from probation to avoid legal process and that the trial court failed to place sufficient findings on the record to support its decision to order him to serve his effective four-year sentence in confinement. The State argues that the trial court properly revoked the Defendant's probation and placed his sentence into effect. We agree with the State.

A trial court has the discretionary authority to revoke probation upon a finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. Tenn. Code Ann. §§ 40-35-310(a); -311(e)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). The trial court also is vested with the discretionary authority to determine the consequences of a defendant's violation of his or her probation, among which is the full revocation and execution of the sentence as originally entered. *See* Tenn. Code Ann. §§ 40-35-310(a); -311(e). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is illogical or unreasonable and causes an injustice to the party complaining." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (internal quotation and citation omitted).

There are two types of probation violations: non-technical and technical. A non-technical violation is "a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." Tenn. Code Ann. § 40-35-311(e)(2) (2022 Supp.). Upon finding by a preponderance of the evidence that a defendant has committed a non-technical violation, the trial court may "cause the defendant to commence the execution of the judgment as originally entered, which may be reduced by an amount of time not to exceed the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation." *Id*. A technical violation is "an act that violates the terms or conditions of probation but does not constitute a new felony, new class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, or absconding, or contacting the defendant's victim in violation of a condition of probation." *Id*. at § 40-35-311(g) (2022 Supp.). A trial court may not revoke probation based on one instance of a technical violation or violations. *Id*. at § 40-35-311(d)(2) (2022 Supp). Upon a second or subsequent technical violation, the trial court may revoke probation and order a specified term of incarceration or resentence the defendant for the remainder of the unexpired term. *Id*. at § 40-35-311(e)(1)(A), (B) (2022 Supp).

Probation revocation is a "two-step" process by the trial court. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). "The first [step] is to determine whether to revoke

- 6 -

probation, and the second [step] is to determine the appropriate consequence upon revocation." *Id*. Each step is a separate and distinct decision, although there is no requirement that two separate hearings be held. *Id*. Upon revoking probation, a trial court may order incarceration for a period of time, execute the original sentence, extend the probationary period by up to two years, or return the defendant to probation "'on appropriate modified conditions.'" *State v. Daniel*, No. M2021-01122-CCA-R3-CD, 2022 WL 6644369, at *2 (Tenn. Crim. App. Oct. 11, 2022) (quoting *Dagnan*, 641 S.W.3d at 756). In determining the consequence of a probation revocation, the trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. This court must review and address both decisions on appeal. *Id*. at 757-58. As long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record, this court's standard of review is abuse of discretion with a presumption of reasonableness. *Id*. at 759.

This court has previously recognized the definition of "abscond" as "[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process." *State v. Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023) (quoting *State v. Wakefield*, No. W2003-00892-CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003) (quoting *Black's Law Dictionary 8* (6th ed. 1990))).

Initially, we note that the State argues that the distinction between a technical and a non-technical violation is irrelevant in this case because the version of Tennessee Code Annotated 40-35-311 applicable to the Defendant's probation revocation allowed the trial court to revoke probation and place his original sentence into effect for either type of violation. In support of its argument, the State relies on *State v. Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319, at *4 (Tenn. Crim. App. Nov. 28, 2023), in which a panel of this court *sua sponte* stated that the trial court was required to follow the probation revocation law in effect at the time of the offenses, not the law in effect at the time of the revocation.

In *Butler*, the defendant committed the offenses in May 2020. 2023 WL 8234319, at *1. At that time, Tennessee Code Annotated section 40-35-311(d) provided that "[t]he trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." *Butler*, 2023 WL 8234319, at *4 (quoting Tenn. Code Ann. § 40-35-311(d)) (2019)). Moreover, Tennessee Code Annotated section 40-35-311(e)(1)(A) provided that if the trial judge found by a preponderance of the evidence that the defendant violated the conditions of probation, the judge could revoke probation and "[c]ause the defendant to commence the execution of the

judgment as originally entered, or otherwise, in accordance with § 40-35-310." *See id. at* *5 (quoting Tenn. Code Ann. § 40-35-311(e)(1)(A) (2019)).  Effective July 1, 2021, though, Tennessee Code Annotated section 40-35-311(d) was amended to add that a trial judge cannot revoke probation for a felony offense based on one instance of a technical violation or violations, and subsection (e) was amended to provide for graduated terms of confinement for second or subsequent technical violations.  *See id.* at *5 (quoting Tenn. Code Ann. § 40-35-311(d)(2) & (e)(1)(A)(i)-(iv) (2021 Supp.))  Noting the general rule that a defendant must be sentenced pursuant to the statute in effect at the time of the offense, the panel concluded that the probation revocation statute in effect prior to the 2021 amendment controlled.  *Id.* at *6 (citing *State v. Tolle*, 591 S.W.3d 539, 545 (Tenn. 2019); *State v. Saint*, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2008); *State v. Mason*, No. E2018-01310-CCA-R3-CD, 2019 WL 3992473, at *4 (Tenn. Crim. App. Aug. 23, 2019)).  As the panel explained, "This is because '[w]hen the trial court revokes a defendant's probation, any action it takes thereafter relates back to the sentence previously imposed.'"  *Id*.

However, as noted by the Defendant in his reply brief, Public Chapter 409, section 27, of the Public Act specified that the 2021 amendment to Tennessee Code Annotated section 40-35-311 "shall take effect July 1, 2021, the public welfare requiring it, *and apply to court determinations made on or after that date*." (emphasis added).  The legislature "explicitly stated" that the changes to Tennessee Code Annotated section 40-35-311 were to apply to determinations made on or after July 1, 2021.  *State v. Bennington*, No. E2021-01163-CCA-R3-CD, 2022 WL 2966264, at *3 (Tenn. Crim. App. July 27, 2022), *perm. app. denied*, (Tenn. Dec. 14, 2022).  The panel in *Butler* did not mention Public Chapter 409, section 27, and case law is replete with recent opinions in which this court cited the amended version of Tennessee Code Annotated section 40-35-311 even though the defendant committed the offense prior to the effective date of the amendment.  *See, e.g., State v. Mosby*, No. M2022-01070-CCA-R3-CD, 2024 WL 380100, at *4-5 (Tenn. Crim. App. Feb. 1, 2024); *State v. Doxtater*, No. E2023-00261-CCA-R3-CD, 2023 WL 8319200, at *5-7 (Tenn. Crim. App. Dec. 1, 2023); *State v. Miller*, No. M2023-00138-CCA-R3-CD, 2023 WL 7126615, at *4-6 (Tenn. Crim. App. Oct. 30, 2023); *State v. Nelson*, No. M2023-00311-CCA-R3-CD, 2023 WL 6843541, at *4-5 (Tenn. Crim. App. Oct. 17, 2023*); State v. Mitchell*, No. M2022-00948-CCA-R3-CD, 2023 WL 6167499, at *3-4 (Tenn. Crim. App. Sept. 22, 2023); *State v. Collier*, No. E2022-00146-CCA-R3-CD, 2023 WL 5013879, at *5 (Tenn. Crim. App. Aug. 7, 2023); *State v. Wright*, No. M2022-01616-CCA-R3-CD, 2023 WL 3863273, at *6 (Tenn. Crim. App. June 7, 2023); *see also State v. Misty Paul,* No. W2023-00830-CCA-R3-CD, 2024 WL 638763, at *4 (Tenn. Crim. App. Feb. 15, 2024) (stating that although the defendant violated probation several years before July 2021, amendment applied because trial court's determination for probation violation occurred in May 2023); *State v. Gibbs*, No. M2021-00933-CCA-R3-CD, 2022 WL 1146294, at *5 n.1 (Tenn. Crim. App. Apr. 19, 2022) (noting that the 2021 amendment did not apply to the trial court's revocation decision because it did not become effective until

after the defendant's revocation hearing).  Therefore, we conclude that the amendment to subsections (d) and (e) applies in this case.

Turning to the steps in *Dagnan*, the Defendant does not contest the trial court's decision to revoke his probation.  Instead, he contests the trial court's finding that he absconded, which is a non-technical violation, rather than failed to report, which is a technical violation.  The proof at the revocation hearing established that the Defendant was placed on probation in October 2019, that he admitted to absconding, and that his probation was revoked and reinstated on June 10, 2020.  The Defendant was released from jail and reported to the probation office for intake on June 22, 2020.  Just two days later, he failed to show up for his Strong-R assessment.  Moreover, on June 29, 2020, when probation officers went to conduct a home visit at the address provided by the Defendant, he was not there.  The probation officers even went to the Salvation Army to try to find him to no avail.  In fact, Ms. Owens did not learn the Defendant's whereabouts until February 20, 2023, when she received an electronic notification that he had been arrested.  By that time, the Defendant had been missing for two and one-half years.  At no point during that period did he report to probation or even attempt to contact Ms. Owens despite his having access to a telephone "sometimes."  The trial court made extensive findings in support of its determination that the Defendant absconded, and we conclude that the trial court did not abuse its discretion.

Turning to the second step in *Dagnan*, the consequence for the violation, the Defendant contends that the trial court failed to place sufficient findings on the record to justify ordering him to serve his sentence in confinement.  We disagree.  Given that the Defendant committed a non-technical violation, the trial court was statutorily authorized to order that he serve the remainder of his effective sentence in confinement.  *See* Tenn. Code Ann. § 40-35-311(e)(2) (2021).  Although the trial court's comments for ordering confinement were brief, the court stated that it was placing the Defendant's sentence into effect because the violation was his second for absconding.  The trial court also appeared to consider that the Defendant made no attempts to comply with probation after his probation already had been revoked and reinstated, stating that "Mr. Taylor has basically thrown his nose at those obligations since June of 2020."  Accordingly, we affirm the trial court's revoking the Defendant's probation and ordering him to serve his effective four-year sentence in confinement.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.


_____
JOHN W. CAMPBELL, SR., JUDGE